JOSHUA G. HORNER v. ALFRED LAWRENCE.

Forsyth, the owner of a strip of woodland through which a railroad ran, having procured the wood to be cut, employed Horner to haul it. Horner, in order to reach said woodland, obtained permission from Lamb, the owner of an adjoining field, where the hogs of Lawrence were being pastured, to pass through the field and to open a gap in the fence at a certain place, with directions to close it up after he went in and after he came out, as the hogs and cattle in the field might get through on the railroad and get killed; and Horner passed through with his teams, leaving the gap open while the wagons were being loaded, but closing it when he went out; the hogs escaped through the gap and one was killed and the other injured on the railroad—*held*, that the leaving down the bars by Horner, was an intentional and wilful violation of his authority, and a misfeasance for which, as a servant or agent of Forsyth, he cannot claim exemption against the party injured.

On *certiorari* to the Burlington Pleas.

Argued at November Term, 1873, before Justices BEDLE, DALRIMPLE and SCUDDER.

For the plaintiff in *certiorari*, *F. Voorhees.*

For the defendant, *Kingman.*

The opinion of the court was delivered by

BEDLE, J. Lawrence had two hogs in pasture upon Lamb's farm, in a field adjoining a strip of woodland owned by Forsyth, but separated by a worm fence, and through which

woodland ran the Camden and Burlington County Railroad. Forsyth procured the wood upon his land to be cut, and employed Horner with two teams to haul it at a certain sum per day for each team. Forsyth lived about five miles from the woodland, and Horner about a mile from Forsyth. The case shows no instruction from Forsyth to Horner how to reach the woodland, but it appears that to get the wood it was necessary to go through the field where the hogs were being pastured. There are no facts, however, showing that Forsyth had any right to a way by necessity over Lamb's land. Horner saw Lamb and got permission from him to open a gap in the fence at a certain place, but with directions to close it up after he went in and after he came out, and also stating "that there were hogs and cattle in the field adjoining, which might get through and on to the railroad and get killed." Horner opened the gap and passed through with his two teams and wagons and a hired man, leaving the gap open while the wagons were being loaded, but closing it after driving out. This occurred twice on one day and once on the next.

Without referring further to the evidence, the case shows sufficient to justify the Pleas in finding that the hogs escaped through the gap, and that one was killed and the other injured upon the railroad. But it is said that there can be no recovery, because Horner was the agent or servant of Forsyth, and that the failure of Horner to put up the bars, was a mere neglect of duty in the course of such agency, for which he should be responsible only to his principal.

Whether, in answer to that, Horner was engaged in an independent employment, or whether the immunity of an agent or servant to a third person extends beyond mere neglects in the scope of an agency arising out of or in reference to matters, in the nature of contracts between the principal and third parties, (*Shearm. & Red. on Neg.* §§ 111, 112,) or what the exact limit of responsibility may be, need not now be settled, for the evidence is such that the court below could have considered Horner as having wilfully left down the bars, and thereby became responsible for his own tort, with-

out reference to any question of agency. He had no directions from Forsyth how to go upon the wood lot, or how to manage with the fence. It does not appear that he informed Forsyth of Lamb's permission, but if Horner is considered as Forsyth's servant he could only, at best, stand as a servant, with authority from Forsyth, precisely the same as the permission given by Lamb, and subject to the direction that he should close up the fence, while the wagons were being loaded, to prevent the escape of the hogs. Now, according to the fair and natural conclusion of the case, Horner purposely left down the fence and trusted to watching the gap, so as to prevent the hogs from going through, if they should attempt it. They escaped his vision, no doubt, while he and his hired man had forgotten their sentry duty at the gap. His conduct was not mere neglect—it was intentional and wilful violation of his authority. It was his own *misfeasance*, for which, as servant, he cannot, in any respect, claim exemption against the party injured.

This view of the case sustains the judgment below, and it should be affirmed.